# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

ROBERT CLAY JR.,

     Plaintiff,          Case No.: 21-CV-00066-JPS

v.

GREENDALE SCHOOL DISTRICT;

KIMBERLY AMIDZICH,
in her individual and official capacity;

JULIE GROTOPHORST,
in her individual and official capacity;

     Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

   Plaintiff Robert Clay Jr. ("Plaintiff") has filed the above action against Greendale School District, its Superintendent Kimberly Amidzich ("Ms. Amidzich"), and its Human Resources Director Julie Grotophorst ("Ms. Grotophorst") (together "Defendants") alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964 and First Amendment retaliation under 42 U.S.C. § 1983 against all Defendants, and tortious interference with contract against the individuals. Defendants bring this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Civil L. R. 56 because: (1) Defendants did not discriminate against Plaintiff on the basis of his religion; (2) Defendants did not retaliate against Plaintiff for engaging in any constitutionally protected speech; (3) Ms. Amidzich and Ms. Grotophorst did not tortiously interfere with Plaintiff's contractual relationship; and (4) Plaintiff was terminated for a legitimate, non-discriminatory reason after he sent an inappropriate email to students that led to complaints

and compromised Plaintiff's ability to successfully lead his classroom. Accordingly, Defendants ask that the Court dismiss this Complaint in its entirety with prejudice.

## STATEMENT OF FACTS - STIPULATED[1]

### I.    PLAINTIFF'S EMPLOYMENT WITH GREENDALE SCHOOL DISTRICT.

Plaintiff first began employment with the Greendale School District on approximately January 3, 2018 as a French teacher. (*Deposition of Robert Clay Jr. "Clay Depo." 24:7-8, 24:16 at Dkt. 13-1*). Initially, Plaintiff was a part-time employee while another teacher was on maternity leave. (*Clay Depo. 24:10-11*). Following the teacher's maternity leave, Plaintiff continued to work as a substitute teacher for the remainder of the school year. (*Clay Depo. 24:24, 25:7-8*). Following the school year, Plaintiff also taught in the school district's 2018 summer enrichment program, which ended in August 2018. (*Clay Depo. 25:9-13, 25:23*).

Plaintiff was re-hired with the Greendale School District for the 2019-2020 school year as a part-time French teacher. (*Clay Depo. 25:23-25, 26:19-22*). His supervisor was John Weiss, who had been principal of Greendale Middle School since 2008. (*Deposition of John Weiss "Weiss Depo." 10:6-11 at Dkt. 13-2; Clay Depo. 27:19-20*). Mr. Weiss, as principal, would generally speak with Plaintiff, for any reason, a couple of times a week. (*Weiss Depo. 18:10-12*).

### II.    CLASSROOM INTERACTION AND SUBSEQUENT INVESTIGATION.

As part of his duties, Mr. Weiss investigates concerns regarding teacher behavior and performance. (*Weiss Depo. 12:1-5*). Following an investigation, Mr. Weiss shares the information with the Human Resources Director, Julie Grotophorst. (*Weiss Depo. 12:6-11*).

---

[1] In accordance with the Court's trial scheduling order, Dkt. 10, the Statement of Facts included herein is the single agreed-upon statement of facts created by all parties.

On December 3, 2019, some students in Plaintiff's class returned from a field trip that involved seeing a play. (*Weiss Depo. 31:25, 32:1; Clay Depo. 33:21-22*). The students who had been on the field trip were dressed up. (*Weiss Depo. 32:1-2; Clay Depo. 34:5-6*). Plaintiff commented that the students were all dressed up that day. (*Weiss Depo. 32:2-4; Clay Depo. 35:2-4*). The students told Plaintiff that they were going to a wedding, and one student added that her female friend in the class was going to be her husband. (*Weiss Depo. 32:8-11; Clay Depo. 35:12-23*). Plaintiff then commented to the female student who had been identified as the "husband" that he did not know she was a boy. (*Weiss Depo. 32:12-13; Clay Depo. 35:22-23*). Multiple students responded by saying "you can't discriminate" or "that's discrimination" and similar remarks. (*Weiss Depo. 32:13-14; Clay Depo. 36:3, 36:12-14*). Both Plaintiff and the students described the conversation as playful or light-hearted. (*Deposition of Julie Grotophorst "Grotophorst Depo." 18:23-24 at Dkt. 13-3; Clay Depo. 35:16-17*).

On the evening of December 3, 2019, Plaintiff sent an email to seven students from his French class. (*Clay Depo. 37:16-18; Weiss Depo. Ex. 1*). The email was sent to the same students Plaintiff had the discussion with in his classroom earlier in the day. (*Clay Depo. 37:21*). Plaintiff sent the email using his district email account, which was delivered to the students' district email accounts. (*Weiss Depo. 101:16-21*). Generally, teachers email students using the district's email system for curriculum or instruction related purposes. (*Weiss Depo. 102:22-24*). The students did not ask for Plaintiff to email them and Plaintiff did not notify anyone in administration, including Mr. Weiss, that he was emailing students about the conversation that took place in the classroom. (*Clay Depo. 38:10-11 & 42:13-18*).

The email sent by Plaintiff stated, in part, "I want to address the playful conversation in the back row about gay marriage. When a student mentioned my 'discrimination' I want to share that

3

words were placed in my mouth. I support all of my Frenchy students. You all offer me insight about your background and family history!" (*Weiss Depo. Ex. 1*). The email went on to say "But if you were asking me to support LGBT marriage, that is an issue that I definitely oppose. Alas, it is my belief that does not change with pop culture. In closing, a few years ago -when you were in elementary school- the majority of Californians voted on two occasions against the legalization of this marriage. These millions of people I agreed with in their abjection. More recently, the Supreme Court voted 5 to 4 that LGBT marriage should be legal. With that said, it is best in society that we respect one another's differences." (*Weiss Depo. Ex. 1*). Prior to sending this email to students, Plaintiff did not notify Mr. Weiss that he felt as though he had been accused of discrimination. (*Clay Depo. 42:23-25 & 43:1-2*).

The email that Plaintiff sent was outside of the context of his class. (*Weiss Depo. 43:18-19*). It was not sent in response to any questions raised by the students and it was not related to Plaintiff's French curriculum. (*Weiss Depo. 43:20-22 & 66:9-10; Clay Depo. 46:22*). Plaintiff's French curriculum consisted of French language lessons and did not include general politics or gay marriage. (*Clay Depo. 45:24-25, 46:1, & 46:13-16; Deposition of Kimberly Amidzich "Amidzich Depo." 91:17-19 at Dkt. 13-4*). Though Plaintiff's comments regarding same-sex marriage were not related to his job duties, Plaintiff sent the email in response to the students accusing him of discrimination earlier that day. (*Amidzich Depo. 92:5-15; Grotophorst Depo. 44:11; Clay Depo. 39:24-40:2*).

Mr. Weiss became aware of the email sent by Plaintiff the following morning. (*Weiss Depo. 21:9-11*). Approximately six students came to Mr. Weiss' office to discuss the email they received. (*Weiss Depo. 24:18-20*). The students were upset by the email and were concerned that they had received it. (*Weiss Depo. 24:21-25*). Following receipt of the students' concerns, Mr. Weiss

4

received parent complaints about the inappropriateness of emailing a specific group of students, the content of the email, the opinion shared by Plaintiff, as well as one parent stating that their student felt uncomfortable returning to the classroom. (*Weiss Depo. 26:15-24*).

After his discussions with the students, Mr. Weiss escalated the issue to Ms. Grotophorst. (*Weiss Depo. 50:18-22*). Mr. Weiss escalated the issue because he believed that the contents of the email sent by Plaintiff was outside the scope of Plaintiff's French class and because some students had expressed concerns about feeling safe and returning to the classroom. (*Weiss Depo. 51:12-20*). Mr. Weiss and Ms. Grotophorst had a meeting to discuss the email sent by Plaintiff and then decided to meet with Plaintiff as the next step in the investigation in order to get his version of the events. (*Weiss Depo. 54:18-24, 55:1-2, 55:16-22*).

In meeting with Plaintiff, Mr. Weiss did not feel as though Plaintiff understood that his email was inappropriate. (*Weiss Depo. 56:24-25*). Ms. Grotophorst felt as though Plaintiff was unable to understand why there were concerns about the content of the email he sent or the impact that the email had on students. (*Grotophorst Depo. 23:4-6*). Plaintiff told Mr. Weiss and Ms. Grotophorst that he sent the email because he was upset and felt that the students had accused him of being discriminatory, which he did not understand. (*Clay Depo. 44:23-25*).

Ms. Grotophorst felt that Plaintiff's email created an environment in which students did not feel safe or comfortable in Plaintiff's classroom. (*Grotophorst Depo. 23:6-9*). Mr. Weiss believed that the email was inappropriate because it was not in the context of Plaintiff's class, was not solicited by the students, and was not part of Plaintiff's curriculum. (*Weiss Depo. 57:2-6*).

## III.    PLAINTIFF'S SUSPENSION AND SUBSEQUENT TERMINATION.

Following the meeting, Plaintiff was suspended with pay and did not return to his classroom, a decision that was made jointly by Mr. Weiss and Ms. Grotophorst. (*Weiss Depo.*

5

*59:14-17 & 60:2; Grotophorst Depo. 60:2*). On December 10, 2019 Plaintiff received a letter from Defendant Amidzich, Interim Superintendent of Schools, notifying him that he was being recommended for termination due to the alleged violation of district policies. (*Grotophorst Depo. Ex. 2*). Plaintiff was notified that the District considered the email he sent on December 3, 2019 to be in violation of School Board Policy 341 – Controversial Issues and School Board Policy 411 – Discrimination and Harassment of Students Prohibited. (*Grotophorst Depo. Ex. 2*). The letter notified Plaintiff that the email he sent contained his personal beliefs regarding gay marriage, a controversial topic. (*Grotophorst Depo. Ex. 2*). The letter also notified Plaintiff that the District considered the topics discussed in his email to be irrelevant to the conversation that occurred in his classroom that day, not aligned with district curriculum, and not related to pre-designated course content. (*Grotophorst Depo. Ex. 2*). Plaintiff was also notified that the District considered the statements he made to have created an environment in which students did not feel safe or supported in his classroom, which was counter to the school district's goals around equity and inclusion. (*Grotophorst Depo. Ex. 2*).

Plaintiff's leave was designated as unpaid, effective December 4, 2019 and Plaintiff was notified that he would have an opportunity to present his explanation of his behavior at the December 16, 2019 school board meeting during a closed session. (*Grotophorst Depo. Ex. 2*). Plaintiff was also notified that the school board would vote on the recommendation to terminate his employment and that he could choose to be represented at the meeting. (*Grotophorst Depo. Ex. 2*).

The Controversial Issues policy referenced in the December 10, 2019 letter states, in part, that a student shall have the right to "have the guidance of a teacher who: is impartial and objective in his/her presentation, selects materials suitable to the range, knowledge, maturity and

6

competence of the student, provides data concerning all aspects of the issue under discussion, expresses opinions but informs students it is his/her opinion and not an authoritative answer; brings out facts concerning controversial questions, and treats religious, moral, and ethical values and attitude with respect and sensitivity." (*Grotophorst Depo. Ex. 3*). The policy also states that "all issues discussed within the classrooms will be relevant in terms of pre-designated course content. Parents/Guardians/Students of Greendale Schools shall have a right to complain to the school administration if they believe unfair and prejudiced classroom presentations are being made." (*Grotophorst Depo. Ex. 3*). The policy further states that "the teacher who is in doubt concerning the advisability of discussing certain issues in the classroom is expected to consult with the principal." (*Grotophorst Depo. Ex. 3*).

The Discrimination and Harassment policy referenced in the December 10, 2019 letter states that harassment means behavior toward students or staff members based, in whole or in part, on…sexual orientation…that substantially interferes with a student's school performance or a staff member's work performance or creates an intimidating, hostile or offensive school and/or work environment. (*Grotophorst Depo. Ex. 4*). The policy prohibits conduct that is discriminatory or harassing. (*Grotophorst Depo. Ex. 4*).

At the school board meeting, Plaintiff's termination was discussed in closed session. (*Grotophorst Depo. 70:21-25*). Ms. Grotophorst provided, to the school board, a summary of the investigation, the district's findings, and the recommendation for termination. (*Grotophorst Depo. 71:2-3*). Plaintiff was provided an opportunity to respond to the recommendation for termination. (*Grotophorst Depo. 71:3-4*). He answered questions from board members as well as a lawyer that was present. (*Clay Depo. 48:16-18*). Plaintiff does not believe that he discussed his religion at the board meeting. (*Clay Depo. 49:2-3*).

7

The school board privately deliberated about the recommendation for termination. (*Grotophorst Depo. 71:4-6*). Ultimately, Plaintiff's employment was terminated. (*Weiss Depo. 63:13-14*). Plaintiff was not terminated for the actions that occurred in the classroom (*Weiss Depo. 65:13-15*). Plaintiff is the only employee who had been terminated during Mr. Weiss' tenure as principal. (*Weiss Depo. 63:17-20*).

## IV. PLAINTIFF'S RELIGION AND HIS EMPLOYMENT AT GREENDALE.

Plaintiff identifies as Protestant Christian. (*Clay Depo. 28:3*). Plaintiff has identified as a Protestant Christian since 1984. (*Clay Depo. 28:10*). He believes that marriage is exclusively in God's law between a man and a woman. (*Clay Depo. 28:15-16*). Plaintiff's belief that marriage is exclusively in God's law between a man and a woman is not a consistent belief among all congregations of Protestant Christians. (*Clay Depo. 29:4*). Some congregations of Protestant Christians accept gay marriage as a platform and belief. (*Clay Depo. 29:9-10*).

Plaintiff recalls telling Mr. Weiss in January 2019 that he was a devout Christian and that his grandfather was a preacher. (*Clay Depo. 30:14-15*). Plaintiff does not recall Mr. Weiss having a response to Plaintiff mentioning that he is a devout Christian. (*Clay Depo. 30:17-19*). Plaintiff told Mr. Weiss about his religious background and grandfather because he wanted to impress Mr. Weiss, on Martin Luther King Jr. Day, by telling him that his grandfather worked with civil rights leaders during the civil rights movement. (*Clay Depo. 31:2-13*). The conversation on Martin Luther King Jr. Day took place inside the school's foyer, in passing, while Mr. Weiss was on "morning duty", which involves serving as a hall monitor. (*Clay Depo. 31:18-25 & 32:3-5*). No other individuals overheard the conversation between Mr. Weiss and Plaintiff, and Mr. Weiss does not recall having a conversation with Plaintiff regarding his religious background. (*Weiss Depo. 21:2-4; Clay Depo. 32:8*).

8

Other than the email he sent to the students, Plaintiff never told anyone at Greendale what his position was on gay marriage. (*Clay Depo. 33:9*). Plaintiff's email to the students does not mention that he is a Protestant Christian and Plaintiff does not recall mentioning his religion in his meeting with Mr. Weiss and Ms. Grotophorst. (*Clay Depo. 41:23 & 45:5-7; Weiss Depo. Ex. 1*). Plaintiff does not believe that the school district understood that his opposition to gay marriage was related to his religious beliefs. (*Clay Depo. 53:11-17*). Plaintiff is also aware of, and knows people, who are not religious and who oppose gay marriage. (*Clay Depo. 52:20-22*).

Ms. Amidzich believes that the legalization of same-sex marriage is a controversial political issue. (*Amidzich Depo. 93:20-21*). Greendale Middle School staff would be allowed to wear clothing indicating support for gay marriage but would not be allowed to wear clothing indicating opposition to gay marriage. (*Weiss Depo. 79:20-23*). A Greendale Middle School social studies teacher, Erin McCarthy, has displayed a Pride flag in her classroom since the 2018-2019 school year. (*Deposition of Erin McCarthy "McCarthy Depo." 15:15-16:21 at Dkt. 13-6*). The Pride flag was added to Ms. McCarthy's classroom after her students voted to have the flag included. (*McCarthy Depo. 16:9-12*). Ms. McCarthy displays other flags representing countries and cultures around the world in her classroom, but no flags expressing a political opinion other than the Pride flag. (*McCarthy Depo*. 16:14-18). Ms. McCarthy does not express her personal opinion on controversial issues to her students. (*McCarthy Depo. 15:3-10*). Greendale Middle School staff would be allowed to wear a Catholic cross around their neck as an expression of their religious beliefs. (*Weiss Depo. 81:2-5*). Mr. Weiss believes there is a difference between stating support for a group and stating opposition to a group. (*Weiss Depo. 80:2-14*).

9

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Pursuant to Rule 56(c), summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. Summary judgment must be granted unless the non-moving party comes forward with facts supported by evidence that would enable a reasonable jury to find in its favor. *Id.* at 322-23. A genuine issue of material fact is raised only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must present more than just bare allegations. *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009). Here, no reasonable jury could return a verdict in favor of Plaintiff.

## ARGUMENT

Based on the undisputed material facts, Defendants did not discriminate against Plaintiff on the basis of religion nor have they retaliated against Plaintiff for engaging in any constitutionally protected speech. First, Plaintiff's termination was for legitimate, non-discriminatory reasons having nothing to do with his religion. He was terminated after he sent an inappropriate email to a select group of students that led to complaints and caused a disruption to his classroom environment. Second, Plaintiff's termination was unrelated to any constitutionally protected speech. Plaintiff's email to his students, which led to his termination, was not constitutionally protected speech and therefore cannot form the basis of his § 1983 claim. Finally,

10

Ms. Amidzich and Ms. Grotophorst did not tortiously interfere with Plaintiff's contract with Greendale School District. Ms. Amidzich and Ms. Grotophorst were carrying out their duties and were privileged and justified in their actions in relation to Plaintiff. The fact that Plaintiff was terminated for a legitimate, non-discriminatory reason also undermines any claim that Ms. Amidzich and Ms. Grotophorst tortiously interfered with Plaintiff's employment contract. Accordingly, the Court should grant Defendants' motion and dismiss Plaintiff's complaint in its entirety with prejudice.

I. **PLAINTIFF WAS NOT DISRCIMINATED AGAINST ON THE BASIS OF RELIGION.**

To establish a claim of religious discrimination, Plaintiff may proceed under either the direct or indirect method. *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 201 (7th Cir. 2013).

a. **Plaintiff cannot proceed under the direct method.**

Under the direct method, Plaintiff must present either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence to allow a rational jury to infer that discriminatory intent motivated firing. *Id*. at 201-202.

Plaintiff has no evidence, direct or circumstantial, that would allow a rational jury to infer that discriminatory intent motivated his termination. There is no evidence that any of the Defendants made direct admissions to Plaintiff that his termination was religiously motivated. He has not alleged, and has no evidence of, any individual involved in his termination referencing or even acknowledging his religion. He has no evidence of religious animus on the part of his supervisor, Principal John Weiss, or on the part of Ms. Amidzich, Ms. Grotophorst, or the school board. There is simply no evidence that there is any animus toward his religion, or *any* religion, at Greendale School District.

11

The Court should also take into consideration, as other courts have, that Defendants lacked knowledge of Plaintiff's religion, which undermines his claim of religious discrimination. The Seventh Circuit has stated that it is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he does not know the employee's religion. *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 934 (7th Cir. 2003). In *Van Koten v. Family Health Management, Inc.*, the Northern District of Illinois found that a knowledge requirement was logical and appropriate in a religious discharge case because a plaintiff's membership in a protected class is not readily discernible. 955 F. Supp. 898, 901 (N.D. Ill. 1997). The court in *Van Koten* granted summary judgment to the defendant on plaintiff's religious discrimination claim after the court found that there was no genuine issue of material fact regarding defendant's lack of knowledge that plaintiff was a Wiccan. Similarly, the Northern District of Illinois imposed the same requirement in *Zingerman v. Freeman Decorating Co.*, succinctly finding that without knowledge or belief that plaintiff belonged to a protected class, defendant could not have made any decisions on that basis. No. 02-C-6050, 2003 WL 22057032, at *8 (N.D. Ill. Sept. 3, 2003) (attached to the *Declaration of Attorney Devin S. Hayes ("Hayes Decl.")* ¶ 6, Ex. 5, at Dkt. 13-5). The Eighth Circuit has also reached the same conclusion, finding that an employer cannot intentionally discriminate against an individual based on the individual's religion unless the employer knows the individual's religion. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (8th Cir. 2002) (cited in *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 934 (7th Cir. 2003)).

Here, there was no knowledge of Plaintiff's religion on the part the Defendants. The email Plaintiff sent to his students made no reference to religion. (*Weiss Depo. Ex. 1).* He also did not discuss his religion at the school board meeting on his termination. (*Clay Depo. 49:2-3*). Plaintiff does not recall mentioning his religion to Mr. Weiss or Ms. Grotophorst during the investigation

12

of the email he sent to students. (*Clay Depo. 41:23 & 45:5-7*). The only time Plaintiff was able to recall discussing his religion with the school district was in January 2019, nearly a year before Plaintiff sent his email, when he claims he told Mr. Weiss, in passing during morning duty, that he was a devout Christian. (*Clay Depo. 30:14-15, 31:18-25, & 32:3-5*). Plaintiff admits that Mr. Weiss had no response to him mentioning that he was a devout Christian. He also admits that no one else overheard the conversation. Mr. Weiss, for his part, does not recall ever having the alleged conversation regarding Plaintiff's religious background. (*Clay Depo. 30:17-19 & 32:8; Weiss Depo. 21:2-4*). Even if taken as true, this one-sided discussion in passing nearly a year earlier is insufficient evidence of any knowledge of Plaintiff's religion. Moreover, Plaintiff himself does not believe that Defendants understood that his opposition to gay marriage was related to his religious beliefs. (*Clay Depo. 53:11-17*).

Plaintiff cannot argue that Defendants could have, or should have, inferred his religious beliefs solely from his opposition to gay marriage. Not only did Plaintiff fail to tell anyone that his opposition was based in religion, Plaintiff admits that there are Protestant Christians who support gay marriage and that entire congregations accept it as a platform and belief. (*Clay Depo. 29:4 & 29:9-10*). Moreover, Plaintiff is also aware of, and knows people, who oppose gay marriage but are not religious. (*Clay Depo. 52:20-22*). Considering there are individuals who oppose gay marriage on non-religious grounds, and that there are religious congregations, including Protestant Christians, who accept gay marriage as a platform and belief, it would be unreasonable to expect Defendants to have inferred that Plaintiff was expressing any religious beliefs when he sent the email to his students.

Plaintiff cannot demonstrate through the direct method that he was subject to discrimination based on his religion. When taken together, all of the evidence, including Plaintiff's

13

failure to bring up his religion at any time between the classroom incident on December 3, 2019 and his termination, as well as Plaintiff's acknowledgment that opposition to gay marriage is not necessarily tied to religion, cannot support any finding of discriminatory intent on the part of the Defendants.

### b. Plaintiff cannot proceed under the indirect method.

Under the indirect method, Plaintiff must establish a *prima facie* case of discrimination by establishing that: (1) he is a member of a protected class; (2) he was performing his job according to Defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364 (7th Cir. 2009). If Defendants then present a legitimate, non-discriminatory basis for the adverse employment action, Plaintiff must show that the Defendants' proffered reason was pretext. *Id.* at 365. To show pretext, Plaintiff must show that Defendants' reason was a lie, specifically a phony reason for some action. *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 202 (7th Cir. 2013). Plaintiff cannot establish a *prima facie* case nor can he demonstrate that Defendants' legitimate, non-discriminatory reason for terminating his employment is pretext.

*Prima Facie Case*

Though Defendants had no knowledge of Plaintiff's religious beliefs when he was terminated—which alone shows that there is no pretext—Defendants acknowledge that as a Protestant Christian Plaintiff is a member of a protected class. Defendants also admit that Plaintiff suffered an adverse employment action when he was terminated. Plaintiff cannot establish,

14

however, that he was meeting Defendants' legitimate performance expectations nor can he establish that a similarly situated person not in his protected class was treated more favorably.

Plaintiff cannot demonstrate that he was meeting Defendants' performance expectations because Plaintiff was terminated for policy violations. A violation of an employer's policy is a failure to meet an employer's legitimate performance expectations. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365 (7th Cir. 2009). Plaintiff's email violated two policies: School Board Policy 341 – Controversial Issues and School Board Policy 411 – Discrimination and Harassment of Students Prohibited. The Controversial Issues policy specifically requires that "all issues discussed within the classrooms [be] relevant in terms of pre-designated course content". (*Grotophorst Depo. Ex. 3*). Plaintiff's email to his students was completely irrelevant to his pre-designated course content. Plaintiff's curriculum consisted of French language lessons and did not include any lessons on general politics or gay marriage. (*Clay Depo. 45:24-25, 46:1, & 46:13-16; Amidzich Depo. 91:17-19*). By sending students an unsolicited email offering not only his opinion on gay marriage but information related to the voters of California and the Supreme Court, Plaintiff forced his students to engage with issues that were outside of his pre-designated course content.

Plaintiff's violation of the Discrimination and Harassment policy also demonstrates that he was not meeting Defendants' expectations. The Discrimination and Harassment policy prohibits conduct that is discriminatory or harassing and defines harassment to include behavior toward students based on sexual orientation that substantially interferes with a student's school performance or creates an intimidating, hostile, or offensive school environment. (*Grotophorst Depo. Ex. 4*). Mr. Weiss initially escalated the issue to Human Resources, in part, because of student concerns about feeling safe and returning to Plaintiff's classroom. (*Weiss Depo. 51:12-20*). Ms. Grotophorst, who conducted the investigation and participated in recommending the

15

termination of Plaintiff's employment, felt that Plaintiff's email created an environment in which students did not feel safe or comfortable in Plaintiff's classroom. (*Grotophorst Depo. 23:6-9*). Plaintiff's creation of a negative, hostile classroom environment was a violation of the Discrimination and Harassment policy. Plaintiff cannot argue that he was meeting Defendants' performance expectations when he was engaging in conduct that violated policies and led to student and parent complaints.

Plaintiff also cannot point to a similarly situated coworker, outside of his protected class, who was treated more favorably. Similarly situated employees must be directly comparable to Plaintiff in all material respects. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-366 (7th Cir. 2009). This includes showing that coworkers engaged in similar rule or policy violations. *Id.* at 366. Plaintiff must identify a comparable employee who held the same job (teacher), engaged in the same or comparable misconduct (sent an unsolicited email to students regarding his personal beliefs on a controversial issue that was outside of his curriculum), did not hold his religious beliefs (Protestant Christian or religious-based objection to gay marriage), and was treated more favorably. *Id.* Plaintiff cannot do so because no such comparator exists.

*Pretext*

In addition to not being able to demonstrate a *prima facie* case, Plaintiff also cannot demonstrate that Defendants' legitimate, non-discriminatory reason for his termination is pretext. Plaintiff would need to demonstrate that Defendants lied about his termination reason in order to conceal the fact that they were discriminating against him based on his religion. This is not possible for two reasons: (1) there is absolutely no evidence that Defendants lied about his termination

16

reason and (2) Defendants cannot lie in order to conceal that they terminated Plaintiff for his religion when Defendants had no knowledge of Plaintiff's religion to begin with.

There is no question that Plaintiff sent the email to his students. There is also no question that the email upset students and led to complaints. As such, it is hard to imagine how Plaintiff could argue that Defendants' reason for terminating Plaintiff was a lie. He may not agree with the decision to terminate his employment however this does not transform the termination reason into a *lie*. Moreover, as discussed above under the direct method analysis, Defendants were unaware of Plaintiff's religion. It simply is not possible for Defendants to lie about Plaintiff's termination reason in order to cover up discrimination on a basis that Defendants did not even know existed.

Plaintiff cannot establish a claim of religious discrimination under either the direct or indirect methods. There is no evidence to suggest that Defendants terminated Plaintiff based on his religion, no evidence to suggest that the legitimate, non-discriminatory reason for his termination was pretext, and Defendants were not even aware of Plaintiff's religious beliefs. Plaintiff's claim for religious discrimination should be dismissed.

## II. PLAINTIFF WAS NOT RETALIATED AGAINST FOR ENGAGING IN PROTECTED SPEECH

42 U.S.C. § 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." Plaintiff's claim that he was retaliated against for engaging in constitutionally protected speech, however, is without merit.

17

Plaintiff's speech at issue is not constitutionally protected. The Seventh Circuit has addressed this very question and stated that the First Amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system. *Mayer v. Monroe County Community School Corp.*, 474 F.3d 477, 480 (7th Cir. 2007). In *Mayer*, a student asked a teacher whether she participated in political demonstrations. *Id.* at 478. The teacher responded by saying that when she passed a demonstration against the nation's military operations in Iraq and saw a placard that said "honk for peace", she honked her car's horn to show support for the demonstrators. *Id.* Parents complained about her comment and the teacher alleged that the incident led to her termination. *Id.* She then brought a claim under 42 U.S.C. § 1983 alleging that she was terminated because she took a political stance during a current-events session in her class, violating the First Amendment.

In analyzing *Mayer's* claim, the Seventh Circuit noted that it previously had, in *Webster v. New Lenox School District No. 122*[2], held that a teacher did not have a constitutional right to introduce his own views on a subject and was required to stick to prescribed curriculum, including both the subject matter and the prescribed prospective on the subject matter. *Mayer v. Monroe County Community School Corp.*, 474 F.3d 477, 479 (7th Cir. 2007). This holding was because a school system does not regulate a teachers' speech, it *hires* that speech, noting specifically that a teacher hired for social studies cannot use it as a platform for a revisionist perspective contrary to the approved curriculum. *Id.* The court also notes that it is important to consider that pupils are a captive audience. *Id.* Education is compulsory and children who attend school because they are required should not be subject to teachers' idiosyncratic perspectives. *Id.* As a result, the court in

---

[2] 917 F.2d 1004 (7th Cir. 1990).

*Mayer* affirmed dismissal of the plaintiff's claim because the First Amendment did not entitle the plaintiff, a teacher with a captive audience, to cover topics or advocate viewpoints that departed from the curriculum adopted by the school system. *Id*. at 480.

The *Mayer* case requires that Plaintiff's § 1983 claim be dismissed. *Mayer* was allegedly terminated after she advocated a point of view, in response to a pupil question, that led to parent complaints. Plaintiff provided students of his French language class his *unsolicited* point of view on gay marriage that led to complaints from both students and parents. (*Weiss Depo. 26:15-24, 43:20-22, & 66:9-10; Clay Depo. 46:22*). Moreover, Plaintiff's class curriculum did not cover gay marriage or social studies. (*Clay Depo. 45:24-25, 46:1, & 46:13-16; Amidzich Depo. 91:17-19*). As a public school teacher at Greendale Middle School Plaintiff conducted the education of a captive audience. As such, he was not entitled to cover topics or advocate viewpoints that departed from his French language curriculum.

Plaintiff cannot escape the restriction on his First Amendment rights by arguing that he was speaking as an individual citizen and not as a "teacher". First and foremost, Plaintiff sent his email to students in his class and the instructor/student relationship does not end the moment the instructional period is over. *Pigge v. Carl Sandburg College*, 464 F.3d 667, 671 (7th Cir. 2006). He cannot escape the limitations he faces as a teacher simply by choosing to email students in the evening rather than addressing them directly in the classroom. Further, Plaintiff cannot argue that he was not acting in his capacity as a teacher when he used his district email account to email students at *their* district email accounts, about an incident that took place *in the classroom*. (*Weiss Depo. 101:16-21 & 102:22-24; Clay Depo. 37:21*). In no way did Plaintiff somehow turn off his role as a teacher when he emailed the students.

19

Even if Plaintiff had not been in front of a captive audience his conduct would not have been protected by the First Amendment. In *Pigge v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006), a cosmetology instructor at a public community college (as opposed to a compulsory primary or secondary school) brought a claim under 42 U.S.C. § 1983 after she was non-renewed following an incident where she gave a gay student two religious pamphlets on the sinfulness of homosexuality. In affirming summary judgment for the defendant, the court found that the college had an interest in ensuring that its instructors stayed on message and that the plaintiff's "speech" was not only unrelated to her job of instructing students in cosmetology, it actually inhibited her ability to perform that job by undermining her relationship with students who disagreed with or were offended by her speech. *Id.* at 672. Similarly, here Plaintiff provided unsolicited information, as well as his personal opinion, on gay marriage to students of his French class. His actions were not only unrelated to his French curriculum, the disturbance he caused inhibited his ability to perform his job by damaging his relationship with students and parents.

As a public school teacher at Greendale Middle School, Plaintiff did not have unrestricted First Amendment rights to say anything he wanted to his students. Instead, Plaintiff's protected speech to his students was limited to not only the curriculum, but the prescribed perspective on the curriculum. Because gay marriage was not a part of Plaintiff's curriculum, he was not engaging in constitutionally protected speech when he sent students of his French class an unsolicited email detailing his personal opinion of gay marriage. Plaintiff's claim for First Amendment retaliation under 42 U.S.C. § 1983 should be dismissed.

## III. DEFENDANTS DID NOT TORTIOUSLY INTERFERE WITH PLAINTIFF'S EMPLOYMENT CONTRACT

In Wisconsin, a claim for tortious interference with a contract has five elements: (1) the plaintiff had a contract or a prospective contract with a third party; (2) the defendant interfered

20

with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere. *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 456, 597 N.W.2d 462 (Wis. Ct. App. 1999). Here, Plaintiff is unable to establish a claim for tortious interference with his employment contract.

The transmission of truthful information in Wisconsin is privileged, does not constitute improper interference with a contract, and cannot subject one to liability for tortious interference with a contract. *Mackenzie v. Miller Brewing Co.*, 2000 WI App 48, ¶ 63. In the employment context, divulging truthful information and expressing critical personal opinions about a co-employee's work are not wrongful or unlawful acts and those acts, cannot, therefore, give rise to liability for tortious interference with contractual relations. *Id*. at ¶ 69. Further, in determining whether interference is improper, courts consider the nature of the actor's conduct; the actor's motive; the interests of the other with which the actor's conduct interferes; the interest sought to be advanced by the actor; the social interests in protecting the freedom of action of the actor and the contractual interest of the other; the proximity or remoteness of the actor's conduct to the interference; and the relations between the parties. *Id*. at ¶ 64.

At summary judgment, once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case. *Transportation Ins. Co., Inc. v. Hunzinger Const. Co.*, 179 Wis. 2d 281, 291-292, 507 N.W.2d 136 (Wis. Ct. App. 1993). The party moving for summary judgment need only explain the basis for its motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue

of material fact; the moving party need not support its motion with affidavits that specifically negate the opponent's claim. *Id*. at 292.

Here, Plaintiff cannot prove a claim of intentional interference. Plaintiff's conclusory statement from his Complaint that the claim he violated district policies is "false" is the type of bare allegation that is insufficient to survive summary judgment. *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009). Ms. Grotophorst, as head of Human Resources, investigated complaints made against Plaintiff related to his conduct with students from one of his classes. Her investigation, which included Mr. Weiss, Plaintiff's principal, allowed Plaintiff to provide his side of the story. (*Weiss Depo. 54:18-24, 55:1-2, 55:16-22*). Mr. Weiss and Ms. Grotophorst jointly decided to suspend Plaintiff's employment as a result of the investigation. (*Weiss Depo. 59:14-17 & 60:2; Grotophorst Depo. 60:2*). Ms. Amidzich, as the highest-ranking administrator in the school district, made the formal recommendation to the school board that Plaintiff's employment be terminated. (*Grotophorst Depo. Ex. 2*). At the school board meeting, Ms. Grotophorst provided the school board a summary of the investigation, the district's findings, and the recommendation for termination. (*Grotophorst Depo. 71:2-3*). This occurred in a closed-session meeting where Plaintiff was given the opportunity to respond to the recommendation for termination. (*Grotophorst Depo. 70:21-25 & 71:3-4; Clay Depo. 48:16-18*). There is absolutely nothing in the record establishing that anything communicated by Ms. Grotophorst or Ms. Amidzich was a lie. They were both carrying out their duties when they transmitted truthful information about the investigation into Plaintiff's actions. Such transmission is privileged.

Finally, Plaintiff cannot, with the record before the Court, establish that Defendants Grotophorst and Amidzich were not justified in recommending Plaintiff for termination. Plaintiff, a French teacher, emailed students after-hours and provided his personal views on gay marriage,

22

which led to student and parent complaints. In the investigation into his conduct, Ms. Grotophorst felt that Plaintiff could not grasp why his conduct was inappropriate. (*Grotophorst Depo. 23:4-6*). She felt that his email created an environment in which Plaintiff's students did not feel safe in his classroom. (*Grotophorst Depo. 23:6-9*). It is unimaginable that the head of human resources at a school district and the superintendent would not be justified in recommending termination for a teacher who engaged in such conduct and created such environment for students. Plaintiff's disagreement with his termination is insufficient to support his claim.

This is not a case where Plaintiff is claiming that he never engaged in the offending conduct or that Defendants lied about him engaging in the offending conduct. Plaintiff instead is trying to allege that his conduct, which he admits to and which caused students and parents to complain to the principal and not feel safe in his classroom, was not a violation of any policy. Plaintiff then would have the Court believe that Ms. Amidzich and Ms. Grotophorst were not truthful when they alleged that his conduct was in violation of policies that were, by their very words, meant to address conduct similar to Plaintiff's. Plaintiff's position is unreasonable and lacks merit.

Ms. Amidzich and Ms. Grotophorst did not tortiously interfere with Plaintiff's employment contract. Plaintiff engaged in inappropriate conduct that led to student and parent complaints, and created an environment where students did not feel safe. Their transmission of that truthful information to the school board, including referencing two policies that Plaintiff's conduct violated, was privileged, justified, and cannot be the basis for a claim of tortious interference. Plaintiff's claim for tortious interference with his employment contract should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated this 1st day of March, 2022.

By: ___*Devin S. Hayes*_____

    Laurie J. McLeRoy, SBN 1018964
    Devin S. Hayes, SBN 1089943
    Attorneys for Defendants Greendale School
    District, Kimberly Amidzich, &
    Julie Grotophorst
    von BRIESEN & ROPER, s.c.
    411 East Wisconsin Avenue, Suite 1000
    Milwaukee, WI 53202
    Telephone: (414) 287-1480 (McLeRoy)
    Telephone: (414) 287-1483 (Hayes)
    Fax: (414) 238-6556
    laurie.mcleroy@vonbriesen.com
    devin.hayes@vonbriesen.com

37720664_1.DOCX

24